UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JESSICA MAIORANO, a minor, by and
through JAMES MAIORANO, as next friend

Plaintiff,

-vs-                                                          Case No.  6:05-cv-107-Orl-19KRS

GILBERT SANTIAGO, an Orange County
Sheriff's Officer in his individual capacity;
JOHN DOES 1-5; KEVIN BEARY,
SHERIFF OF ORANGE COUNTY,
FLORIDA, Jointly, Severally, and/or in the
Alternative

Defendants.
_____

# ORDER

This case comes before the Court on the following:

1.      Defendants Kevin Beary's and Gilbert Santiago's Motion to Dismiss Plaintiff's

Amended Complaint and Incorporated Memorandum of Law.  (Doc. No. 15, filed on

March 4, 2005).

2.      Plaintiff Jessica Maiorano's Memorandum of Law in Opposition to Defendants Kevin

Beary's and Gilbert Santiago's Motion to Dismiss Plaintiff's Amended Complaint and

Incorporated Memorandum of law.  (Doc. No. 17, filed on March 17, 2005).

## Background

The following allegations are drawing from Plaintiff's Amended Complaint.  (Doc. No. 9, filed

on February 23, 2005).

On April 14, 2004, Gilbert Santiago, an Orange County Sheriff's Deputy, approached Jessica Maiorano while Maiorano was in a physical confrontation with another female student at Freedom Highschool.[1] (*Id.* at ¶¶ 7,8). Without warning, Santiago allegedly applied his M26 taser to the left side of Maiorano's back, causing severe pain, even though Maiorano contends that she never verbally or physically threatened Santiago. (*Id.* at ¶¶ 8, 9). As a direct and proximate result of the use of force, Maiorano alleges that she suffered severe physical pain and psychological damage in the past and will continue to suffer in the future. (*Id.* at ¶ 11).

On February 23, 2005, Plaintiff Jessica Maiorano filed an Amended Complaint against Defendants Gilbert Santiago, John Does 1-5, and Kevin Beary, Sheriff of Orange County Florida. Count I is a claim against Defendant Santiago for compensatory and punitive damages and attorney's fees and costs. In Count I, Plaintiff alleges that Defendant Santiago engaged in excessive force, that the excessive force included, but was not limited to, the use of the taser, and that such force violated Plaintiff's rights under 42 U.S.C. section 1983. (*Id.* at ¶¶ 10, 11). Count II is a claim against Defendant Beary, Orange County Sheriff, for compensatory and punitive damages and attorney's fees and costs. (*Id.* at ¶ 17). In Count II, Plaintiff alleges that as a direct and proximate result of Defendant Beary's policy decisions concerning the Orange County Sheriff's Office use of force policy, Plaintiff suffered severe pain and psychological damage. (*Id.* at ¶ 15). Plaintiff also alleges that as a direct result of Defendant Santiago's and Defendant Beary's negligent practices, Plaintiff suffered severe physical pain and psychological damage in the past and will continue to suffer in the future. (*Id.* at ¶

---

[1] Plaintiff's memorandum in opposition to Defendants' Motion to Dismiss stipulates that she was not older than fourteen and did not weigh more than one hundred pounds when the incident with Santiago occurred. (Doc. No. 17, p. 4). However, the Amended Complaint does not state the age or weight of Plaintiff at the time of the incident, only that she was engaged in a physical confrontation with another female student.

16).  Count III is a claim for damages against John Does 1-5.  (*Id.* at ¶ 20).  In Count III, Plaintiff alleges that an insufficient amount of time has passed in which to determine the true identity of the individuals and/or corporations responsible for the payment of damages and that for the purposes of the complaint these individuals and entities have been named John Does 1-5.  (*Id.* at ¶¶ 18, 19).  In Count IV, Plaintiff requests judgment against Defendants Santiago, Beary, and John Does 1-5, jointly, severally, and/or in the alternative for compensatory damages, punitive damages, attorney's fees and costs, and other relief that the Court may deem just, proper, and equitable.  (*Id.* at ¶ 21).

On March 4, 2005, Defendants Kevin Beary and Gilbert Santiago filed a Motion to Dismiss Plaintiff's Amended Complaint.  (Doc. No. 15).  Defendants argue that Plaintiff fails to state a cause of action for excessive force in violation of the Fourth Amendment, that Defendant Santiago is entitled to qualified immunity, that the Amended Complaint fails to allege a cause of action for municipal liability against the Orange County Sheriff, that Count IV should be dismissed for vagueness, and that punitive damages are not recoverable against a governmental entity.

This Order analyzes Defendants' Motion to Dismiss.

## Standard of Review

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom.  *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  Furthermore, the Court must limit its consideration to the pleadings and written instruments attached as exhibits thereto.  *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993).  A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set

of facts that would entitle it to relief.  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**Analysis**

Defendants' first argument is that Plaintiff fails to state a cause of action for excessive force in violation of the Fourth Amendment.  All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are analyzed under the Fourth Amendment's reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Whether the force is reasonable hinges on the facts and circumstances of each case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.  The "reasonableness" of the use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  *Id.*  The "calculus of reasonableness" must embody allowance for the fact that police officers are often forced to make split-second judgments in tense, uncertain, and rapidly changing situations.  *Id.* at 396-97.

The Eleventh Circuit has interpreted the Supreme Court's language in *Graham* as requiring the balancing of three factors in determining whether the force applied was reasonable.  *Draper v. Reynolds*, 369 F.3d 1270, 1277-78 (11th Cir. 2004).  These factors are the need for the application of force, the relationship between the need and amount of force used, and the extent of injury inflicted. *Id.*

In the instant case, Plaintiff alleges that she did not make a verbal or physical threat towards Santiago and that Santiago, without warning, applied his taser to the left side of Plaintiff's back while Plaintiff was engaged in a physical confrontation with another student.  Defendants argue that a police officer's use of a taser on an individual engaged in an altercation who has not physically or verbally

-4-

threatened the officer is reasonable under the Fourth Amendment's excessive force analysis. Defendants cite *Draper v. Reynolds*, 369 F.3d 1270 (11th Cir. 2004), in support of their argument.

In *Draper*, the defendant officer stopped the plaintiff's truck on the highway after observing that the truck's tag light was not properly illuminated. *Id.* at 1272. The plaintiff was blinded by the officer's flashlight and politely asked the officer to stop shining the light at him. *Id.* The officer then instructed the plaintiff to meet him behind the truck, a location in view of a police camera that the officer had activated. *Id.* Upon arriving behind the truck, the plaintiff shouted and complained about the officer's shining the flashlight in his face, insisted that he had done nothing wrong, and behaved in a belligerent manner. *Id.* at 1273. The officer told the plaintiff to stop yelling and informed him that he would be taken to jail if he continued to yell and also told the plaintiff that he needed his log book and bill of lading. *Id.* The plaintiff yelled at the officer, accusing the officer of harassment, and began to walk back towards his truck after handing his license to the officer. *Id.* After the officer again told the plaintiff to retrieve his bill of lading, proof of insurance, and log book, the plaintiff walked back towards the officer and accused him of harassment. *Id.* The plaintiff then began to yell at the officer, and the officer asked the plaintiff to calm down. *Id.* The officer asked the plaintiff several more times to retrieve the requested documents, but the plaintiff continued to yell loudly and complain. *Id.* After the officer's fifth request for the documents, he discharged his taser gun at the plaintiff's chest. *Id.* The plaintiff was handcuffed, searched, and arrested. *See id.* at 1273-74. The district court granted the defendant's motion for summary judgment with regard to the federal claims. *Id.* at 1274.

The plaintiff argued that the defendant officer used excessive force in effectuating the arrest. *Id.* at 1277. The Eleventh Circuit found that the defendant officer's use of the taser gun to effectuate the arrest of the plaintiff was "reasonably proportionate to the difficult, tense, and uncertain situation"

that the officer faced in the traffic stop and did not constitute excessive force. *Id.* at 1278. The plaintiff had behaved in a hostile and belligerent manner and failed to cooperate with the defendant officer no less than five times. *Id.* Because the plaintiff repeatedly refused to comply with the defendant officer's verbal requests, the use of a verbal arrest command was not necessary under these facts. *Id.* The appellate court reasoned that a verbal arrest command accompanied by a physical handcuffing under these circumstances may have further escalated a tense situation into a physical struggle resulting in injury. *Id.* The use of a single taser strike, though shocking to the plaintiff, was reasonably proportionate to the need of force and did not inflict serious injury. *Id.*

Defendants argue that *Draper* stands for the proposition that the use of a taser gun without warning, which prevents a tense situation from escalating, is not excessive force under the Fourth Amendment. First, there is no allegation in the Amended Complaint that the taser was used to prevent escalation of the situation. At the motion to dismiss stage, the Court is limited to the allegations contained within the four corners of the complaint. While the facts in *Draper* were fully developed by the summary judgment stage, in the instant case the Court looks only to Plaintiff's allegations in her Amended Complaint.

Furthermore, Defendants urge a reading of *Draper* that is overly broad. The Eleventh Circuit confined its holding to the facts of that case and did not find as a matter of law that the use of a taser without warning in a tense situation is *per se* reasonable under the Fourth Amendment. The Eleventh Circuit found that a verbal arrest command "was not required in these particular factual circumstances." *Id.*

Even more importantly, the facts of *Draper* are distinguishable from the facts of the instant case. In *Draper*, the defendant officer and the plaintiff were engaged in a verbal altercation with each

other that had escalated to the point that the plaintiff was yelling at the officer and repeatedly refused to comply with the officer's requests.  In the instant case, Plaintiff was allegedly engaged in an altercation with another student, and Santiago discharged his taser at Plaintiff without warning even though Plaintiff had not verbally or physically threatened Santiago.  Because *Draper* is distinguishable from the facts of the instant case and because Defendants' contention that the Eleventh Circuit held that the use of a taser, without warning, in a tense situation is *per se* reasonable is based on an overly broad reading of *Draper*, Defendants' argument that *Draper* demonstrates that Plaintiff failed to state a claim for relief from excessive force is not well taken.

Defendants urge the Court to find that a single use of a taser by a law enforcement officer to intervene in an ongoing physical altercation among students is not excessive force in violation of the Fourth Amendment.  Defendants contend that a physical altercation is a tense, rapidly evolving situation which requires immediate intervention by law enforcement officers, that Santiago's use of force was de minimis, and that the Amended Complaint does not allege facts suggesting that the taser was used in an excessive manner other than Plaintiff's legal conclusions that use of the taser was excessive.  Defendants cite *Gold v. City of Miami*, 121 F.3d 1442 (11th Cir. 1997), *Durruthy v. Pastor*, 351 F.3d 1080 (11th Cir. 2003), *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000), and *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002) in support of their argument that Santiago's use of force was de minimis.

In *Gold v. City of Miami*, the plaintiff sued the City of Miami, arguing that police officers used excessive force by asking him to place his hands behind his back and handcuffing the plaintiff so tightly that he experienced pain.  121 F.3d 1444, 1446-47.  While the plaintiff experienced pain from the handcuffs for roughly twenty minutes and suffered skin abrasions for which he did not seek

medical treatment, the Eleventh Circuit found that the minor nature of the plaintiff's injuries demonstrated that minimal force was used to apply the handcuffs. *Id.* at 1446-47.

In *Durruthy v. Pastor*, the plaintiff sued the defendant officer, arguing that the defendant officer applied excessive force during arrest when she grabbed the plaintiff from behind, pulled him to the ground while struggling to pin his harms behind him, kneed the plaintiff, and handcuffed him. 351 F.3d at 1085. The Eleventh Circuit found that forcing the plaintiff to the ground and placing handcuffs on him was de minimis force and that the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment. *Id.* at 1094.

In *Nolin v. Isbell*, the plaintiff sued the defendant officer, arguing that the officer's actions of grabbing the plaintiff from behind the shoulder and wrist, throwing him against a van three or four feet away, kneeing him in the back and pushing his head into the side of the van, searching his groin area in an uncomfortable manner, and handcuffing him constituted excessive force. 207 F.3d at 1255. The Eleventh Circuit found that the officer's actions presented a minimal amount of force and injury that did not defeat the officer's qualified immunity. *Id.* at 1258.

In *Vinyard v. Wilson*, the plaintiff sued the defendant officer, arguing that the officer's actions of grabbing the plaintiff's arm and jerking her out of her chair, handcuffing the plaintiff's arm and placing her in the police car, grabbing the plaintiff's arm while she sat handcuffed in the back seat of the police car which bruised her arm and breast, and using two or three bursts of pepper spray in the plaintiff's face while she was handcuffed in the back seat of the police car constituted excessive force in violation of the Fourth Amendment. 311 F.3d at 1343-44. The Eleventh Circuit held that the defendant officer's grabbing of the plaintiff forcibly enough to bruise her arm and breast and pepper spraying of the plaintiff was plainly excessive, reasoning that the plaintiff was under arrest for the

minor offense of disorderly conduct and did not pose a threat to the officer, herself, or the public because she was handcuffed and secured. *Id.* at 1348-49. The appellate court found that the use of pepper spray is reasonable when a plaintiff is either resisting arrest or refusing police requests, such as requests to enter a patrol car or to go to a hospital. *Id.* at 1348.

The application of de minimis force, without more, will not violate the Fourth Amendment's prohibition against the use of excessive force. *Nolin*, 207 F.3d at 1257. Thus, in the instant case, the issue facing the Court is whether under the allegations of the Amended Complaint Santiago's application of his taser against Plaintiff, without warning, while Plaintiff was engaged in an altercation with another student constitutes de minimis force in light of *Gold*, *Durruthy*, *Nolin*, and *Vinyard*. Unlike the instant case in which the Court is dealing with Plaintiff's bare allegations, *Gold*, *Durruthy*, *Nolin*, and *Vinyard* had fully developed factual records at the summary judgment stage.

Furthermore, these cases represent a spectrum of force that the officers applied to the plaintiffs during an arrest. *Gold*, *Durruthy*, and *Nolin* are at one end of the spectrum, and each case represents the application of slightly higher levels of force that the Eleventh Circuit ultimately found to be de minimis. Inapposite to *Gold*, *Durruthy*, and *Nolin*, the Eleventh Circuit found that the defendant officer applied excessive force in *Vinyard*. This finding of excessive force was based on the facts of the particular case including the force applied, in that case pepper spray rather than only physical force, the crime at issue, and the plaintiff's inability to threaten herself, others, or the officer due to her secured state.

Defendants urge the Court to find that the instant case falls within the *Gold*, *Durruthy*, and *Nolin* end of the spectrum rather than the *Vinyard* end of the spectrum. However, applying the force of a taser to a plaintiff student who is not engaged in a severe, violent crime and who is not resisting

arrest or refusing police requests is different from tightly placing handcuffs on an arrestee as in the case of *Gold* or applying physical, bodily force to effectively place handcuffs on an arrestee as in the cases of *Durruthy* and *Nolin*.  While Plaintiff alleges that she was engaged in a physical altercation with another student, Plaintiff does not allege that Santiago ordered her to stop fighting before using the taser or that she refused any police commands.  Given Plaintiff's alleged student status and the fact that Plaintiff's bare allegations do not support an inference that Plaintiff was engaged in a major struggle with another student or was resisting police commands, the Court cannot find that the single application of a taser under the allegations of the Amended Complaint in this particular case is the type of de minimis force contemplated by the Eleventh Circuit in *Gold*, *Durruthy*, and *Nolin*.

While Defendants urge the Court to find that the application of a single taser strike, without warning to the party, is de minimis, such a blanket finding is contrary to the Supreme Court's admonition in *Graham* that the calculus of reasonableness under the Fourth Amendment requires courts to balance the nature and quality of the intrusion against the countervailing governmental interests at stake.  490 U.S. at 396.  To create such a blanket, *per se* rule would contradict the balancing of these important interests that must be based on the totality of the circumstances.

Viewing the factual allegations in the light most favorable to Plaintiff, all the *Graham* factors weigh in favor of Plaintiff.  Plaintiff alleges that she was engaged in an altercation with another person.  While such an altercation could have been a minor fight or a major, deadly struggle, there is nothing in the pleadings to suggest what sort of altercation was occurring.  At the motion to dismiss stage, the Court must draw all reasonable inferences in favor of Plaintiff.  There is nothing to support the inference that Plaintiff posed a significant threat to the safety of herself, Santiago, or others.  Finally, there is no allegation that Santiago ordered Plaintiff to desist or warned Plaintiff that he would

tase her.  Given the bare allegations contained in Plaintiff's Amended Complaint, it cannot be said that

such warning would not be necessary.  *But see McCormick v. City of Fort Lauderdale*, 333 F.3d 1234,

1245 (11th Cir. 2003) ("[t]he constitutional requirement that the use of force be reasonable includes no

requirement to warn a violent felon–in circumstances like these–that the use of pepper spray is

forthcoming.").  Examining the application of the Eleventh Circuit's articulation of the *Graham* factors

to the instant case, it is not apparent from the allegations in Plaintiff's Amended Complaint that

Santiago necessarily had to apply the force of a taser strike to control the situation.  Furthermore,

Plaintiff alleges that the excessive force included, but was not limited to, the taser strike, though

Plaintiff does not identify the other force that Santiago utilized.[2]  While Plaintiff alleges that Santiago

applied only a single taser strike, Plaintiff also alleges that she suffered severe physical pain and

psychological damage in the past and will continue to suffer harm in the future.  Because the *Graham*

factors weigh in favor of Plaintiff, the Court finds that Plaintiff has stated a claim for relief from

excessive force.

Defendants' second argument is that the doctrine of qualified immunity bars Plaintiff's

excessive force claim.  Qualified immunity offers officers complete protection against suits if their

conduct "does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity

allows government officials to carry out their duties without fear of liability or litigation, "protecting

from suit all but the plainly incompetent or one who is knowingly violating the federal law."  *Lee v.*

---

[2] In Plaintiff's brief, she argues that Santiago used the taser more than one time after she had been incapacitated by the first taser strike.  Plaintiff's Amended Complaint, however, does not support an inference that Santiago used the taser more than once.  Plaintiff alleges that "Santiago, without warning, utilized his Orange County Sheriff's Office issued M26 taser to the left side back of the Plaintiff, Maiorano, causing severe pain."  (Doc. No. 9, ¶ 8).

*Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

To receive qualified immunity, the public official must first demonstrate that he was acting within the scope of his discretionary authority when the wrongful acts occurred.  *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).  In the instant case, there is no dispute that Santiago was acting within the course and scope of his discretionary authority when he tased Plaintiff.

Once the defendant establishes that he was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate. *Id.*  The first step of this inquiry requires the Court to determine whether the plaintiff's allegations, if true, establish a constitutional violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2002).  In the instant case, the Court has already found that Plaintiff's allegations could support a violation of the Fourth Amendment's prohibition against the use of excessive force.

The second step of the inquiry requires the Court to determine whether the right was clearly established.  *Id.* at 121.  In *Saucier v. Katz*, the Supreme Court stated that the relevant query is whether it "would be *clear* to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (emphasis added).  In *Hope v. Pelzer*, 536 U.S. 730, 741 (2002), the Supreme Court refined the *Saucier* query, holding that the "salient question ...is whether the state of the law...gave [the officers] fair warning that their alleged treatment [of the plaintiff] was unconstitutional."  (emphasis added).  The *Hope* Court emphasized that officers sued in a section 1983 action have a "*right to fair notice*."  *Id.* at 739 (emphasis added).

Fair notice can be given in three ways.  *Vinyard*, 311 F.3d at 1350-53.  First, the words of the federal statute or federal constitutional provision may be specific enough to establish clearly the law applicable to particular conduct and circumstances to overcome qualified immunity.  *Id.* at 1350.

-12-

Second, if the conduct is not so egregious as to violate the plain language of a statute or constitutional provision on its face, then the Court turns to case law. *Id.* at 1351.  Broad principles may not be tied to particular facts and can clearly establish law applicable in the future to different sets of detailed facts. *Id.*  If a case determined that a particular type of conduct was unconstitutional without linking that conduct to a specific set of facts, the decision as to that conduct clearly establishes a constitutional principle. *Id.*  In the absence of fact-specific case law, the plaintiff may defeat the qualified immunity defense when the general principle applies with obvious clarity to the specific conduct in question, and it must have been obvious to a reasonable police officer that the pertinent conduct given the circumstances was unconstitutional at the time. *Id.* at 1352.  (internal citation and quotations omitted).

If there is no case law with a broad holding that is not tied to a particular set of facts, then the Court examines precedent that is tied to the facts. *Id.* at 1351.  Most judicial precedents are tied to particular sets of facts and fall into this category. *Id.* at 1351-52.

The Court's research reveals no case with facts materially similar to the case at hand. Considering Plaintiff's allegations, no factually particularized, preexisting case law was necessary for it to be obvious to an objectively reasonable officer facing Santiago's situation that his conduct violated Plaintiff's right to be free from the use of excessive force.  In other words based on the bare allegations of the Amended Complaint, it cannot be said that an objectively reasonable officer could believe that it would be reasonable to use a taser against Plaintiff, without advance warning or a verbal command to desist, because of Plaintiff's action of engaging in an unspecified type of physical altercation with another student. *See, e.g., Vathekan v. Prince George's County*, 154 F.3d 173, 179 (4th Cir. 1998) (finding that it was clearly established that it is objectively unreasonable for a police

-13-

officer to fail to give a verbal warning before releasing a police dog to seize someone); *see also Kopf v. Wing*, 942 F.2d 265, 268-69 (4th Cir. 1991) (reversing summary judgment in favor of officer defendants where there existed a factual dispute regarding whether a verbal warning was given, and recognizing validity of the plaintiff's argument that "a forewarning that the dog is going to attack, which provides the suspects a fair chance to surrender, is more reasonable than a surprise assault"). Therefore, the Court finds that Defendants are not entitled to qualified immunity based on Plaintiff's allegations contained in the Amended Complaint.

Defendants' third argument is that Plaintiff has failed to state a cause of action for municipal liability against the Orange County Sheriff.  Defendants argue that the Amended Complaint alleges a claim against the Orange County Sheriff under a respondeat superior theory and that under 42 U.S.C. section 1983 a governmental entity may not be held liable solely under a theory of respondeat superior. Defendants argue that the Amended Complaint as currently drafted alleges either negligent supervision or some type of vicarious liability.

A municipality cannot be held liable for the actions of its employees under section 1983 based on a theory of respondeat superior.  *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 663 (1978).  A municipality is liable only if the deprivation is pursuant to a government custom or policy.  *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001).

In Count II, Plaintiff alleges that as "a direct and proximate result of the policy decisions of Kevin Beary, Sheriff of Orange County, Florida concerning the Orange County Sheriff's Office 'use of force policy,' the Plaintiff, Maiorano, suffered severe continuous pain and psychological damage." (Doc. No. 9, ¶ 15).  Thus, it is clear that Plaintiff has not based the liability of the Orange County Sheriff on a theory of respondeat superior.  Rather, Plaintiff has alleges that her deprivation is a result

of a municipal policy.

Defendants argue that Plaintiff failed to allege how such policy or custom caused Plaintiff's injury.  Defendants ultimately are urging the Court to apply heightened pleading requirements to this case.  However, general standards of notice pleading apply to claims under 42 U.S.C. section 1983. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993).  Therefore, the Court finds that Plaintiff has stated a claim for relief against the Orange County Sheriff.

Defendants' fourth argument is that Count IV of the Amended Complaint is so vague and ambiguous that it fails to state a cause of action and that Count IV involves joint and several liability. Defendants contend that each individual Defendant must be judged on, and be responsible for, his own actions, and one Defendant is not necessarily responsible for the actions of another.  Defendants argue that Plaintiff must allege facts showing that the acts of a particular Defendant proximately caused her injury.

Count IV of the Amended Complaint is a claim against Defendants Gilbert Santiago, Kevin Beary, and John Does 1-5 jointly, severally, and/or in the alternative for compensatory damages, punitive damages, attorney's fees and costs, and such other relief as the Court may deep proper.  (Doc. No. 9, ¶ 21).  Because Count IV is redundant of Counts I through III, the Court dismisses Count IV.

Defendants' final argument is that punitive damages are not permissible against a governmental entity.

In *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981), the Supreme Court held that a municipality is immune from punitive damages under 42 U.S.C. section 1983.  Plaintiff's claim against Defendant Beary is based on his official capacity as Orange County Sheriff.  Official capacity

suits are treated as suits against the governmental entity.  *Kentucky v. Graham*, 473 U.S. 159, 166

(1985).  To the extent that Count II alleges a claim for punitive damages against Defendant Beary,

such damages are not recoverable.


### Conclusion

Based on the foregoing, the Court **GRANTS** in part and **DENIES** in part Defendants Gilbert

Santiago's and Kevin Beary's Motion to Dismiss Plaintiff's Amended Complaint.  (Doc. No.

15).  The Court **dismisses** Count IV.  The Court **denies** Defendants' Motion to Dismiss as to all

other counts.  Plaintiff shall have leave to file an amended pleading within ten (10) days from

the date of this Order.  Defendants shall have twenty (20) days from the date of the Order to

file a responsive pleading.


**DONE** and **ORDERED** in Chambers in Orlando, Florida on May __19th____ 2005.


PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT


Copies furnished to:

Counsel of Record